In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1724

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROBERT GARDNER,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99-CR-108 RL--Rudy Lozano, Judge.

Argued October 24, 2000--Decided January 26, 2001

Before FLAUM, Chief Circuit Judge, and MANION and
EVANS, Circuit Judges.

EVANS, Circuit Judge.  Robert Gardner and a
codefendant were charged with conspiracy to
maintain a crack house, in violation of 21 U.S.C.
sec. 846; with maintaining a crack house, in
violation of 21 U.S.C. sec. 856(a)(1); and with
possession with intent to distribute cocaine, in
violation of 21 U.S.C. sec. 841(a)(1). At trial,
Gardner was found guilty on the first count and
not guilty on the third; the second count was
dismissed during the trial. At sentencing,
Gardner was found responsible for 120 grams of
crack cocaine, resulting in an offense level of
32. His level was enhanced by 2, under sec.
3C1.1, for trial testimony which the court found
was perjurious. This netted him a sentencing
range of 151 to 188 months, and he received 151
months.

Gardner appeals both his sentence and his
conviction. He contends that the trial judge
abused his discretion in excluding the testimony
of a codefendant's attorney, that the evidence
was not sufficient to sustain his conviction, and
that the judge erred in enhancing his offense
level for false testimony during the trial.

In attacking the sufficiency of the evidence, a
defendant bears a heavy burden. United States v.
Wallace, 212 F.3d 1000 (7th Cir. 2000). The

evidence and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the government. United States v. Frazier, 213 F.3d 409 (7th Cir. 2000); United States v. Angle, 2000 WL 1785056 (7th Cir. 2000). We do not weigh the evidence or second-guess the jury's credibility determinations. United States v. Irorere, 228 F.3d 816 (7th Cir. 2000). The test is whether, when the evidence is viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979).

A conspiracy under 21 U.S.C. sec. 846 requires that (1) two or more people agreed to commit an unlawful act and (2) the defendant knowingly and intentionally joined in the agreement. No overt act is required. United States v. Thornton, 197 F.3d 241 (7th Cir. 1999). Guilt can be inferred by the circumstances and the conduct of the parties. United States v. Brown, 934 F.2d 886 (7th Cir. 1991).

The evidence in this case shows that a man named Jermaine Carr and his now-deceased brother moved into a house on Fillmore Street in Gary, Indiana. The previous residents of the house had been selling crack cocaine, and after Carr and his brother moved in, people continued to come to the house to buy crack. Apparently spying a financial opportunity, the Carr brothers began to sell crack out of the house. Jermaine Carr sold crack 6 days a week; men named Roger Taylor, Shun Drayton, and Mario Bird each sold 3 days a week. All supplied their own crack to sell.

Gardner was close friends with Taylor and visited the house seven or eight times. On five occasions he sold crack out of the house by asking Carr, when customers came by, whether he could "get that one."

In April 1999 the Gary Response Investigative Team (GRIT), operating through a confidential informant, made a controlled buy of crack from the house. After a second controlled buy, GRIT officers obtained a search warrant. Proving again how important bad timing is in drug cases, see United States v. Folami, 2001 WL 15922 (7th Cir., Jan. 9, 2001), Gardner had the misfortune of arriving at the house a minute before officers arrived to execute the warrant. The officers put the four men who were in the house, including Gardner, on the floor, handcuffed them, and patted them down for weapons. While inside the house, the men were not searched for drugs. Then the four were taken out of the house and turned over to an FBI agent. The men were again required

to lie down. The agent searched the area and found a plastic bag containing 6.1 grams of cocaine base near Gardner's knees. Agents found other drug-related items in the house. Later, at the GRIT office, money was found in Gardner's underwear.

Gardner testified that the money came from his mother's account which he accessed through an ATM. He testified that the reason he had gone to the Fillmore house was to ask Taylor to do some work on his mother's house. He also testified that he did not agree to maintain a crack house, that he did not go to the house to use drugs, that he had not seen people selling drugs there, and that the crack found was not his.

The evidence showed that Jermaine Carr and his brother clearly conspired to maintain a crack house and committed the substantive offense of maintaining one. To be guilty of conspiracy to operate a crack house, Gardner had to know of the conspiracy and intend to join and associate himself with its criminal design and purpose. United States v. Auerbach, 913 F.2d 407 (7th Cir. 1990). Here, the government proved that Gardner knew of the conspiracy because he actually sold crack out of the house on five separate occasions. He asked Jermaine Carr for permission to sell crack to the customers who came to the house. Gardner also had a mutual interest with the Carrs in the success of the house because it provided him with a place to sell his crack. In turn, by selling crack on the premises, Gardner helped the Carrs be sure that crack was available at the house when customers wanted it. Viewing these facts again as we must in the light most favorable to the government, the evidence was sufficient to sustain Gardner's conviction.

Gardner also contends that the judge abused his discretion in excluding evidence of a conversation between an assistant United States attorney and Paul Jeffrey Schlesinger, the attorney for Taylor. Taylor had pled guilty and was awaiting sentencing. The government had listed Taylor as a potential witness at Gardner's trial but decided not to call him, no doubt because Taylor reportedly would either testify that Gardner had no involvement in the crime or would exercise his Fifth Amendment right not to testify. However, Taylor had also been subpoenaed as a witness for Gardner. The AUSA told Schlesinger that Taylor should be aware that if he testified he risked losing credit on his sentence for acceptance of responsibility and, further, that his offense level might be increased for obstruction of justice. Taylor did not testify.

Gardner claims that the reason Taylor did not testify is that he had been intimidated by the prosecutor's warning about the effects his testimony could have on his sentence. To make matters worse, Gardner thinks the government called attention to the absence of Taylor's testimony. During cross-examination of Gardner, the government elicited testimony that Taylor was a long-time friend of his and that, in fact, Taylor considered Gardner to be a little brother. Gardner contends that the only reason for the cross-examination was to raise the question that if Taylor was such a good friend, why did he not testify on Gardner's behalf.

To explain Taylor's absence, Gardner wanted to call Schlesinger to testify regarding the conversation with the AUSA. The judge excluded the testimony pursuant to Rule 403, saying that the probative value was outweighed by the dangers of unfair prejudice, confusion, the risk of misleading the jury, and by considerations of undue delay. We review this ruling for an abuse of discretion, United States v. Williamson, 202 F.3d 974 (7th Cir. 2000), and find that the exclusion of attorney Schlesinger's testimony was within a proper exercise of the trial judge's discretion.

The cases Gardner relies on to support his claim are off the mark. United States v. Goodwin, 625 F.2d 693, 703 (5th Cir. 1980), is cited for the unremarkable proposition that "[t]hreats against witnesses are intolerable." The Goodwin court goes on to note that "[s]ubstantial government interference" with a defense witness violates a defendant's due process rights. That case is not helpful on this point, however, because the court was unable, on the record before it, to evaluate whether "substantial" interference had occurred. Thus we cannot surmise from that case what substantial interference might be. In United States v. Blackwell, 694 F.2d 1325 (D.C. Cir. 1982), a witness was warned once by both the prosecutor and the trial judge about the consequences of perjury. The court concluded that the "conduct of the judge and the prosecutor just recounted does not begin to approach the level of misconduct" described in other cases where deprivations of due process were found.

In United States v. Jackson, 935 F.2d 832 (1991), we have drawn what we see as the appropriate line between a truthful warning to a potential witness and a highly intimidating threat. We recognized the "narrow path" prosecutors must walk in dealing with unrepresented witnesses. On one hand they have "ethical duties" to warn witnesses of the risk they face in testifying; on the other hand, a

defendant has a right to call witnesses who are free to testify without fear of government retaliation. Where the prosecutor merely provides the witness with a "truthful warning" there is no constitutional violation. Where what the prosecutor says is a threat over and above whatever warning was "timely, necessary, and appropriate," the inference is that the prosecutor was trying to coerce the witness into silence. Jackson involved an unrepresented witness, and the claim was that the defendant's due process rights were violated, not simply that the trial judge committed an evidentiary error. Nevertheless, we think that the principles set forth can guide our analysis of the present situation where the witness, Taylor here, had a lawyer.

The prosecutor informed attorney Schlesinger of the dangers of testimony which might be perceived by the trial judge as false. At the hearing held out of the presence of the jury, Schlesinger testified as follows:

And he [the prosecutor] indicated that anything that my client testified to could be used against him in a sentencing, specifically, that he would be subject to enhance--well, either revocation of acceptance of responsibility to depart his plea. And also, that he could be facing perjury or obstruction of justice charges. And also that he had seen Judge Lozano do that in the past on other cases.

When asked whether that conveyed to him any danger to his client if he testified, he said:

Well, I was aware of the danger to Mr. Taylor and the problems that [the prosecutor] had advised me of in advance to that.

Schlesinger also testified that because his client would not have been sentenced at the time of the Gardner trial, "I would be crazy not to tell him to take the Fifth at that point." Schlesinger was also aware that

[t]he truthfulness of my client's statement, of course, is going to be determined by the Court. And my fear was that whether it's truthful or not, if the Court determines based on the overall evidence that it's not truthful, that the enhancement will be--will be that. And of course, not knowing--the other consideration is not knowing all the evidence that's going to come in, my client runs that risk, even if he indicates that his testimony is truthful to me, you're [the judge] the final determiner or that.

In this context it seems clear that the

prosecutor's statement to Schlesinger was a truthful warning. It also seems that it had no bearing on the issue as to whether Taylor would testify for Gardner. Taylor's attorney was well aware--with or without the prosecutor's warning--that Taylor's self-interest dictated that he remain silent.

Furthermore, practical considerations support the exclusion of the testimony. In order to understand the significance of the warning the jury would need to know something about the arcane sentencing guidelines. Instructing the jury on the guidelines would cause undue delay of the trial. Also, practically speaking, how is it of much benefit to Gardner to have the jury know that Taylor would be testifying for him except for the fact that the judge might find the testimony to be perjurious? All in all, we see no abuse of discretion in the exclusion of Schlesinger's testimony.

Finally, Garner contends that the judge erred in enhancing his sentence 2 levels under sec. 3C1.1 for obstruction of justice. Gardner says the findings that he testified falsely about not dealing drugs at the crack house and that the drugs found near his knees were not his were deficient because the judge did not find that he had willfully given false testimony. He does not contend that the judge was wrong to find that the testimony was false, only that the judge did not find it to be willfully false.

A sentencing court's determination that a defendant obstructed justice is a factual finding reviewed under the clearly erroneous standard. United States v. Brown, 900 F.2d 1098 (7th Cir. 1990). We find no clear error in this situation. The court independently evaluated Gardner's testimony and found him untruthful when his testimony was compared to that of the other witnesses. We have previously found such a finding adequate. United States v. Pedigo, 12 F.3d 618 (7th Cir. 1994). Gardner's statements that he did not deal drugs out of the house or that the drugs found were not his cannot be said to be the result of confusion, mistake or faulty memory. Accordingly, the judgment is AFFIRMED.