**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James F. WILLIAMS, Defendant–
Appellant.**

No. 00–2482.

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 2001.

Decided May 21, 2001.

Before POSNER, EVANS, and WILLIAMS, Circuit Judges.

ORDER

James Williams was convicted of two counts of conspiracy to distribute and possess with intent to distribute cocaine and crack cocaine, 21 U.S.C. §§ 846 and 841(a)(1), and one count of distribution and possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). He was sen-

tenced to life on the first conspiracy count, Count 1, and 20 years on both Counts 2 and 3. Williams now appeals, claiming that the evidence at trial was insufficient to convict him on the first conspiracy count because he engaged in nothing more than a buy-sell relationship with one of the three other persons named in that count as coconspirators. He also claims that his sentence of imprisonment on Count 1 violates the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because drug quantities were not charged in the indictment, submitted to the jury, or proven beyond a reasonable doubt.

In August 1998 a federal grand jury in Benton, Illinois, returned a three-count indictment charging Williams in Count 1 with conspiracy to distribute powder and crack cocaine as part of an ongoing distribution scheme running from December 1996 to July 1997 and involving four named coconspirators in Mt. Vernon and Carbondale, Illinois, and parts of Arkansas. Count 2, the other conspiracy count, and Count 3, a substantive possession count, centered on Williams's role in murdering his roommate, Jerome Townsend, in order to steal and sell Townsend's drug supply.

The facts in this case, as established by the jury and which we must accept as true on this appeal, show that Williams was a governor of the Gangster Disciples street gang in Carbondale. As a governor, he assisted younger gang members in their drug distribution activities by fronting them drugs, connecting them with suppliers, and conferring "blessings" of free drugs to get them back into business after release from prison. Williams collected dues from the members, some of which he used to post bond or hire attorneys for incarcerated gang members.

Carlos Branch met Williams in 1993 (or 1994) when both were confined at the jail in Jackson County, Illinois. Branch had joined the Gangster Disciples when he was 15 years old. Branch considered Williams a father figure, and Williams often referred to Branch as his son. In December 1996 Williams bonded Branch out of jail and took him to Mt. Vernon to meet with Vernell Berry, a long-time friend of Williams. Later, when Williams and Branch were driving back to Carbondale, Williams gave Branch two "sixteenths" of crack—a street term for one-sixteenth of an ounce, or about 1.75 grams—he got from Berry. Branch sold the crack that night and gave the money to Williams. This same process of traveling to Mt. Vernon to meet with Berry and bringing back varying amounts of drugs occurred several more times in the course of the next several days. Branch, who later cooperated with the government, testified at Williams's trial that on the second trip Williams purchased a quarter ounce of crack from Berry, and on the third trip, an ounce. Branch said also that he and Williams subsequently made "a lot" of trips to Mt. Vernon to obtain crack cocaine but could not specify exactly how many. In addition, there were several times that Williams could not accompany Branch to Mt. Vernon to make the purchases; in those instances Williams arranged for someone else to drive Branch. Initially, Berry would hand the crack to Williams; later, when Berry knew Branch better, and at Williams's instruction, he dealt directly with Branch whether Williams was present or not.

At times, Berry did not have crack at his own house, so he would send Williams and Branch to Freddie Cole, a supplier who worked for Berry. According to Branch, Williams would give the drug money to Berry "but the dope might be over at Freddie Cole's, so we would go over there." Cole, who also would later cooperate with the government, testified that

Berry generally charged $100 for a sixteenth but gave Williams a discount on drugs; the first time Berry introduced Williams and Branch to Cole, Cole sold Williams a sixteenth of crack. Cole continued to sell drugs to Williams and to Branch at Williams's instruction. Sometimes Berry would call ahead and let Cole know that Williams and Branch were coming to buy crack, and other times the men would show up without notice. Either way, Cole still sold them crack. Cole also testified that at one point he gave Williams a .38 caliber gun.

Berry, also an eventual government witness, testified that on occasion he went to Arkansas with Williams and Branch to get crack cocaine. At times when Williams was unable to make the trip, he called Berry and asked him to drive Branch to Arkansas. Berry was paid in gasoline and crack. On those trips Branch generally obtained two to three ounces of crack, but once he got seven to nine ounces. Branch was arrested on federal drug charges in July 1997. The day before his arrest, Branch bought two ounces of crack in Arkansas. Branch called Williams from jail and told him where he hid the two ounces, which Williams then disposed of.

Various other Gangster Disciples testified at trial regarding their drug interactions with Williams. Frederick Goosby, a "regent," testified that Williams "blessed" him with two ounces of crack and 1½ ounces of powder cocaine when he got out of prison. From then until late 1996 Goosby obtained one to two ounces of crack from Williams every 3 weeks. Similarly, Cedric Neal testified that Williams "blessed" him with one gram of crack or cocaine when he was released from prison in March 1997.

Several trial witnesses implicated Williams in the murder of Williams's roommate, Jerome Townsend. Both Branch and L.C. Richardson, another gang member, testified that Williams asked for their help in robbing Townsend of his drugs. Williams told Branch he suspected Townsend of working with the police and said they could take Townsend's customers if he were no longer dealing drugs. Branch testified that Williams planned the robbery, which was to take place at the trailer Williams and Townsend shared, and that Williams told Branch and Richardson that they would have to kill Townsend after robbing him. When Townsend returned home in the early morning hours of February 11, 1997, Richardson and Branch followed Williams's command to bind Townsend's arms and legs with duct tape and strangle him with electrical cord. Williams watched the murder from somewhere in the trailer. After Townsend was dead Williams took his jewelry, cash and drugs, which he shared with Richardson and Branch. Williams and Richardson hid Townsend's body in the wooded area of a nearby cemetery.

Williams testified on his own behalf. He admitted posting bond for Branch but denied introducing Berry and Branch so that the two could deal drugs. He insisted that "Carlos Branch in my presence has never bought drugs from Vernell Berry." Williams testified that he did not receive a gun from Cole and that he did not know Goosby. He claimed he did not participate in the murder of Townsend. Finally, he denied even knowing what crack was.

The jury found Williams guilty on all three counts. Williams's PSR calculated his drug quantity under U.S.S.G. § 2D1.1(a)(3) at 1,213 grams of crack, but ultimately the report relied on the cross-reference of § 2D1.1(d)(1) and the first-degree murder guideline of U.S.S.G. § 2A1.1 in setting the base offense level because Townsend's murder was committed in furtherance of the Count 2 drug conspiracy. The probation officer who

prepared the PSR also recommended that Williams's false testimony warranted a 2–level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The probation officer determined that Williams was a Level 43, Category VI offender, for which the sentencing range was mandatory life imprisonment. Williams filed objections to the PSR that focused only on the credibility of the government's witnesses and the 2–level increase for obstruction of justice. He also included a general objection "to each and every paragraph in the presentence report and each and every calculation in the report which attributes either crack cocaine or powder cocaine to the defendant." At sentencing, though, Williams objected only to the obstruction points. The court found that the government's witnesses were credible, that Williams committed perjury at trial, and that Williams was a principal in Townsend's murder. The court agreed with the PSR's recommended guidelines calculations and sentencing range.

Count One of the indictment charged that Williams was part of a cocaine and crack conspiracy involving Branch, Berry, Cole, and others. On appeal, Williams challenges the sufficiency of the evidence on this court. Though he talks about "variance" and "multiple conspiracies," his sufficiency argument reduces to the simple contention that the government failed to prove Count 1 because it never showed more than a buyer-seller relationship between him and Cole. Apparently, the crux of Williams's argument is that the government must, but failed to, prove that *every* person named in the indictment was actually a member of the conspiracy, and so the evidence on Count 1 was insufficient to convict him at all. According to Williams, to convict, "the jury had to find that Mr. Cole agreed that Mr. Williams would redistribute the cocaine," and, he insists, there was no evidence of any such agreement.

■ As an initial matter, the government argues that Williams waived his "buyer-seller" argument by tendering proposed jury instructions without including one on this subject or even mentioning the subject at all. But Williams is arguing that the evidence was insufficient, not that the jury was improperly instructed. And as for his sufficiency argument, Williams did make a Rule 29 motion for acquittal at the end of the government's case-in-chief, though he did not renew the motion at the end of his own case. *See* Fed.R.Crim.P. 29(a). Williams moved for a new trial but did so more than 7 days after the verdict. *See* Fed.R.Crim.P. 33. Moving for acquittal is generally sufficient to preserve sufficiency arguments on appeal, *see United States v. Pribble*, 127 F.3d 583, 590 (7th Cir.1997), but failure to renew a motion for judgment of acquittal at the close of trial or within 7 days after the verdict constitutes a forfeiture of that argument on appeal. *See United States v. Taylor*, 226 F.3d 593, 596 (7th Cir.2000); *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir. 1996).[1] It follows, then, that review is for plain error, *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir.1998), which in this context is present only if Williams's conviction on Count 1 amounts to a mani-

---

1. Although these cases characterize the question of one of *waiver,* the fact that the court still reviews for plain error even without a proper Rule 29 motion evidences that the issue really is whether the defendant *forfeited* his sufficiency argument on appeal by failing to renew his Rule 29 motion at the close of evidence. *See United States v. Harris*, 230 F.3d 1054, 1058 (7th Cir.2000) (although waiver and forfeiture are related doctrines, waiver occurs when a defendant intentionally relinquishes or abandons a known right, whereas forfeiture occurs when a defendant fails to timely assert his rights by failing to object; a forfeiture is reviewed for plain error).

fest miscarriage of justice, *United States v. Carlino*, 143 F.3d 340, 343 (7th Cir.1998).[2]

■ Standard of review aside, Williams's argument displays a fundamental misunderstanding of the law of conspiracy. Williams apparently concedes with respect to Count 1 that the evidence establishes that he, Berry, and Branch conspired to resell drugs for profit. *See United States v. Duff*, 76 F.3d 122, 126 (7th Cir.1996) ("The crime of conspiracy is an agreement ... which does not depend on the identity of the other conspirators"); *United States v. Smith*, 995 F.2d 662, 666 (7th Cir.1993) (the government need not prove specifically with whom the defendant conspired or that he even knew the other conspirators). We highlighted the difficulty of pursuing a sufficiency-of-the-evidence approach to challenge a conspiracy conviction in *United States v. Townsend*, 924 F.2d 1385 (7th Cir.1991):

> [This approach] suggests that if the evidence is insufficient to support the jury's finding that a defendant conspired with every defendant charged in the indictment his conviction must fall. That conclusion is incorrect. The crime of conspiracy focuses on agreements, not groups. True, it takes at least two to conspire, but the government doesn't have to prove with whom a defendant conspired; it need only prove that the defendant joined the agreement alleged, not the group.

*Id.* at 1389. Thus, Cole's role in the conspiracy, if any, is irrelevant so long as Williams admits, as he has here, that he conspired with Berry and Branch.

■ Even if Williams's conspiracy conviction on Count 1 were contingent on Cole's involvement, there was ample evidence to support the jury's finding that all of the named coconspirators, including Cole, joined together with the common design and purpose to distribute powder and crack cocaine. Williams's attempt to characterize his relationship with Cole as one between a buyer and seller separate from the conspiracy is unavailing. What is required for conspiracy beyond a mere buyer-seller relationship is an agreement to commit some other crime beyond the crime of buying and selling drugs. *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir.1993). Evidence of a conspiracy, as opposed to a buyer-seller relationship, may include "transactions involving large quantities of drugs, prolonged cooperation between the parties, standardized dealings, and sales on a credit." *United States v. Smallwood*, 188 F.3d 905, 912 (7th Cir. 1999). No factor is dispositive, and if enough of them signal a specific, ongoing interest beyond consummation of the individual buy-sell transactions, we will not disturb the jury's verdict that in fact there existed a cooperative venture. *United States v. Pearson*, 113 F.3d 758, 761 (7th Cir.1997).

■ In this case the trial evidence, which was (we, of course, assume) believed by the jury, established that Williams introduced Berry and Branch so that Berry could supply them with crack for redistribution. Cole was an integral part of the charged conspiracy; Cole worked for Berry. Berry introduced Williams and

---

**2.** Even if Williams had not forfeited his sufficiency argument, he would still face a nearly insurmountable hurdle when attacking the sufficiency of evidence on appeal because the standard of review is extremely deferential. *See United States v. Gardner*, 238 F.3d 878, 879 (7th Cir.2001). The evidence and all reasonable inferences must be viewed in the light most favorable to the government. *Id.* The test would be whether, when the evidence is viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Branch to Cole so that when Berry did not have cocaine on hand to sell them, he could send them to Cole's house to get it. On those occasions, Branch testified, Williams "would give the money to [Berry], but the dope might be over at Freddie Cole's, so we would go over there." Berry would call Cole and let him know that Williams and Branch were coming over for crack. Cole testified that, because of Williams's relationship with Berry, defendant was given a discount on the drugs. There is ample evidence that Berry and Cole cooperated in an organized and regular manner to supply drugs to Williams and Branch for redistribution; under *Lechuga* this is all that is required to make Cole a coconspirator. *Lechuga*, 994 F.2d at 350 ("If, knowing that Lechuga was a drug dealer, Pagan assisted him in distributing drugs to at least one dealer farther down the chain . . ., then Lechuga and Pagan were coconspirators."); *see also Pearson*, 113 F.3d at 762 ("This is enough evidence to establish that Scott agreed with Porter to distribute cocaine to McDowell. . . . Such an agreement makes Scott a conspirator to distribute cocaine.").

■ Williams also claims that he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In drug cases under 21 U.S.C. §§ 846 and 841(a)(1) after *Apprendi*, a defendant can be sentenced to a term of imprisonment above the default statutory maximum of 20 years for cocaine offenses only if the drug type and amount sufficient to trigger the higher statutory maximum under § 841(b)(1)(A) or (B) is charged in the indictment and found by the jury beyond a reasonable doubt. *See United States v. Nance*, 236 F.3d 820 (7th Cir.2000). Because Williams did not raise this issue at trial or sentencing, we review only for plain error. *Id.* at 825. Under a plain-error standard of review, we must determine whether (1) there was error; (2) it was plain; (3) it affected the defendant's

substantial rights; and (4) it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *United States v. Mietus*, 237 F.3d 866, 875 (7th Cir.2001).

■ There was an error because we have held that *Apprendi* applies to enhanced conspiracy sentences under §§ 846 and 841(a)(1), *see United States v. Westmoreland*, 240 F.3d 618, 633 (7th Cir.2001), and the error is plain because drug quantity was neither charged in the indictment nor determined by the jury. Absence of a quantity allegation in the indictment is not significant, however, because we held in *United States v. Patterson*, 241 F.3d 912, 914 (7th Cir.2001), that an indictment's silence about drug quantity is irrelevant in a plain-error analysis. As for the failure to submit the issue to the jury, Williams's claim ultimately fails because he cannot show that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. If it is clear beyond a reasonable doubt that a properly instructed jury would have found that Williams distributed more than 50 grams of crack, then the error was not so serious so as to require us to set aside the judgment. *Nance*, 236 F.3d at 826. Thus, to affirm Williams's sentence, the question is whether the extent of the conspiracy's drug activity was so "overwhelmingly demonstrated that any reasonable jury would have been bound to conclude that the conspiracy encompassed more than 50 grams of crack." *Patterson*, 241 F.3d at 914; *see also United States v. Jackson*, 236 F.3d 886, 888 (7th Cir.2001) (to show that the error was prejudicial, defendant must show that there is some likelihood that the judgment would have been different had the error not been made). The district court concluded, based on the trial evi-

dence and the PSR, that Williams was responsible for over 1,213 grams of crack.

Although the evidence of drug quantity in Williams's case was not as overwhelming as that in *Patterson*, 241 F.3d at 914 (the Traveling Vice Lords's 10–year conspiracy, which at one point grossed over $40,000 a day in retail sales, overwhelmingly established that more than 50 grams of crack was involved in the conspiracy), and *Mietus*, 237 F.3d at 875 (defendant was arrested in the possession of 1,000 pounds of marijuana), it is stronger than the evidence held insufficient to sustain convictions in *Westmoreland*, 240 F.3d at 635, and *United States v. Noble*, 246 F.3d 946 (7th Cir.2001). In the latter two cases, the issue of drug quantity was hotly contested at trial and supported by limited physical evidence, including uncorroborated testimony and testimony from unreliable witnesses. *See Westmoreland*, 240 F.3d at 635; *Noble*, 246 F.3d 946, 954. Here, the district court relied on the testimony of witnesses, some corroborated by other government witnesses, that the court found credible. Branch's testimony alone established that Williams was accountable for at least 293 grams of crack cocaine. In just the first three trips that Branch took with Williams to Mt. Vernon to meet Berry, Williams gave Branch almost 40 grams of crack cocaine to sell. Cole testified to selling crack to Williams on several occasions. In addition to the numerous subsequent purchases that Williams or Branch, at Williams's direction, made from Berry in Mt. Vernon, Branch and Berry both traveled to Arkansas with Williams several times to obtain crack. Branch testified that on one trip, he and Williams obtained seven ounces (almost 200 grams), and Berry recalled purchasing almost nine ounces (approximately 225 grams) with Williams on a trip.

There was also abundant testimony from other witnesses regarding drug transactions they had with Williams. Both Goosby and Neal testified that they were "blessed" with two ounces of crack and one gram of powder cocaine, respectively. And there was more, such as routine crack sales to Goosby and other witnesses. As we stated in *United States v. Brough*, 243 F.3d 1078 (7th Cir.2001), it is highly unlikely that "a judge who thought that a preponderance of the evidence demonstrates distribution of 2,000 grams [would have] though that a much smaller quantity had not been established beyond a reasonable doubt." Similarly, no reasonable jury would have failed to convict Williams of being involved in the sale of at least 50 grams of crack cocaine given the overwhelming evidence that he was involved in much more.

AFFIRMED.