# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-4211

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

BRENT E. MERRITT,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 01 CR 81—**John Daniel Tinder**, *Judge.*

———————

ARGUED OCTOBER 20, 2003—DECIDED MARCH 22, 2004

———————

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* In this direct appeal of a judgment and sentence entered pursuant to a jury verdict, the Defendant-Appellant Brent E. Merritt seeks to have his conviction for possession of firearms and ammunition as a convicted felon under 18 U.S.C. § 922(g)(1) (2000) overturned for any of the following three reasons. First, he asserts that the district court should have suppressed evidence obtained during a search of his home pursuant to a warrant (later determined to lack sufficient probable cause to issue), rather than applying the good-faith exception to

the exclusionary rule. Second, Merritt argues that the jury's verdict was not supported by sufficient evidence. And last, he challenges whether his sentence is proper because the district court considered relevant conduct only proven by a preponderance of the evidence, and not beyond a reasonable doubt. For the following reasons, all these arguments fail, and we affirm the district court's judgment and sentence.

## I.  History

Merritt, a convicted felon, owned Club 2001, an Indianapolis nightclub for persons under the age of twenty-one. Merritt and his family also resided in Indianapolis. During the early morning hours of December 3, 2000, a fire completely destroyed Club 2001. Merritt had insured the club for approximately $678,000. Following the fire, he "made preliminary inquiries into filing an insurance claim," although he never submitted one. The insurance company and federal, state, and local authorities investigated the fire.

A substance which accelerates the intensity and rate at which a fire spreads was found in several areas of the club. In addition, no signs of forced entry were found, and Merritt and his two sons were the only persons with keys to the club. Also, his sons provided investigators with conflicting statements about the removal of disc-jockey equipment from the club prior to the fire. This equipment was later found on January 4, 2002 in the sons' residence.

Based upon the foregoing information which aroused suspicions of arson, Bureau of Alcohol, Tobacco, and Firearms ("BATF") Agent Michael A. Vergon, with the assistance of Assistant United States Attorney ("AUSA") Joseph H. Vaughn, sought to obtain a search warrant for Merritt's residence, in part to determine through financial documents and records whether Merritt had a financial motive to commit arson.

An affidavit and application for a search warrant were submitted on January 22, 2001 to a United States magistrate judge. In the affidavit, Agent Vergon provided the incident information, as well as the following: he had twelve years of experience with the BATF, including some arson investigations; Club 2001 closed at approximately 1:30 a.m. the morning of the fire; Merritt used an accountant as a bookkeeper for Club 2001 and to prepare tax returns; and Merritt's wife provided the accountant with various documents and records, including documents prepared on a computer in Merritt's home. The magistrate judge found that the affidavit established probable cause and issued a warrant to search Merritt's residence for financial or other documents and records that could reveal a motive for arson. The search warrant was executed on January 23, 2001.

While searching Merritt's residence, law-enforcement officers, including Agent Vergon, discovered a vault located in the basement of the home. After Merritt informed Agent Vergon that the items in the vault were not his and that he could not gain entry, Mrs. Merritt opened the vault. The agents discovered numerous firearms, ammunition, and various firearm attachments. Agent Vergon then obtained a second search warrant to search the Merritt residence for firearms. In addition to the firearms, other items were found in the vault, including glamour shots of Mrs. Merritt, photographs of nude and partially nude women, one of which was signed, "Brent, Lustfully Yours," three photo identifications of Merritt, and several pieces of mail addressed to Brent Merritt. The execution of this search warrant resulted in the confiscation of seventy-three firearms and many rounds of ammunition from the vault. In addition, one shotgun was found in a concealed office in the basement of the residence.

Consequently, in August of 2001, Merritt was indicted with possession on or about January 23, 2001, of approxi-

mately seventy-four firearms and numerous rounds of ammunition by a convicted felon (Count 1), and possession on or about January 23 and continuing through on or about June 12, 2001, of two firearms, a machine gun, and a silencer by a convicted felon (Count 2), in violation of 18 U.S.C. § 922(g)(1). On September 25, 2001, Merritt moved to suppress the fruits of the search of his residence, alleging that the affidavit supporting the search warrant lacked probable cause and that the good-faith exception to the exclusionary rule should not apply. Specifically, he argued: (1) the affidavit signed by Agent Vergon in support of the warrant intentionally or recklessly included false statements and/or omitted material facts, negating the magistrate's finding of probable cause, *see Franks v. Delaware*, 438 U.S. 154 (1978); or, if this first argument were to fail, then (2) the good-faith exception to the exclusionary rule nonetheless could not apply because a reasonably well-trained officer would have known that the warrant lacked probable cause despite a neutral and detached magistrate's authorization, *see United States v. Leon*, 468 U.S. 897, 922-23 (1984). Based upon either argument, Merritt asserted, the search violated the Fourth Amendment to the United States Constitution. The district court conducted a suppression hearing on December 20 and 21, 2001.

Following the hearing, in January of 2002, the district court issued an Order setting out three key findings. First, the court determined that Agent Vergon had not made a false statement, nor omitted material facts from the affidavit, either intentionally or with reckless disregard of the truth. Second, because nothing on the face of the affidavit indicated that the financial records sought would reveal the Merritts to be in financial distress, the court concluded that the affidavit failed to allege probable cause. And third, the court held that Agent Vergon acted with good faith in executing the warrant. Hence, the court denied Merritt's motion to suppress.

Following a jury trial which lasted from July 8 to July 12, 2002, Merritt was found guilty of Count 1 and acquitted of Count 2. During Merritt's sentencing hearing on November 27, 2002, the district court concluded by a preponderance of the evidence that, for the count of conviction, Merritt possessed more than twenty-five, but less than 100, firearms. The court therefore applied a six-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(1)(C) (2003), resulting in a total offense level of twenty-eight. As a result, Merritt was sentenced to 108 months incarceration, three years supervised release, and a $37,500 fine.

## II. Analysis

### A. Motion to Suppress Evidence

Merritt first argues that the district court erred when, following the hearing on December 20-21, 2001, it denied his motion to suppress the fruits of the January 23 search of his home. He asserts that the search was in violation of his Fourth Amendment rights. The Fourth Amendment protects against "unreasonable searches and seizures" and generally requires that a law-enforcement officer have probable cause before making an arrest or conducting any search. U.S. Const. amend. IV. When evidence is obtained in violation of the Fourth Amendment, the exclusionary rule precludes the use of such evidence and its fruits in criminal proceedings against the victim of the violation. *See United States v. Calandra*, 414 U.S. 338, 347 (1974). However, it is not a personal constitutional right of the aggrieved party; rather, it is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* at 348.

The exclusionary rule has such a deterrent effect when, by "punishing [ ] behavior [which violates a citizen's Fourth Amendment rights] and removing the incentive for its repetition," *United States v. Espinoza*, 256 F.3d 718, 724

(7th Cir. 2001), *cert. denied*, 534 U.S. 1105 (2002), it "alter[s] the behavior of individual law-enforcement officers or the policies of their departments," *Leon*, 468 U.S. at 918. The exclusionary rule should not be applied, therefore, when its application will not result in "appreciable deterrence." *See Leon*, 468 U.S. at 909 (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)). Evidence obtained pursuant to a facially valid search warrant later found to be unsupported by probable cause should be suppressed only if "the magistrate abandoned his detached and neutral role, . . . the officers were dishonest or reckless in preparing their affidavit, or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926. And conversely, evidence should not be suppressed if an officer acted with objective good faith, obtained the search warrant from a neutral and detached magistrate, and acted within its scope, since the exclusion of evidence could have no affect on police conduct. *Id.* at 919-21. In other words, under those circumstances, because there is nothing to deter, the good-faith exception to the exclusionary rule applies.

A district court's findings of fact and credibility determinations from a suppression hearing are reviewed for clear error, while its conclusions of law are reviewed de novo. *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002); *see also United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002), *cert. denied*, ___ U.S. ___, 123 S. Ct. 1947 (2003). A factual finding is clear error only when we are " 'left with the definite and firm conviction that a mistake has been made.' " *Jackson*, 300 F.3d at 745 (quoting *United States v. Gravens*, 129 F.3d 974, 978 (7th Cir. 1997)). And we give "special deference to the trial court that heard the testimony and had the best opportunity to observe the witnesses at the suppression hearing." *Id.* We also review de novo a district court's ultimate legal conclusion regarding whether

a law-enforcement officer reasonably relied upon a subsequently invalidated search warrant. *Koerth*, 312 F.3d at 865.

As noted, the district court's Order denying Merritt's motion to suppress contained three key holdings. And although only the third ruling, applying the good-faith exception, is explicitly contested on appeal, in the interest of thoroughness and because Merritt may implicitly contest the first ruling, we will discuss each in turn.

### 1. Intentional or Reckless Disregard of the Truth

Under *Franks v. Delaware*, 438 U.S. 154 (1978), if a defendant can demonstrate by a preponderance of the evidence that the signatory of the warrant affidavit made a false statement (or omitted a material fact ) either intentionally or with reckless disregard for the truth, then a court will consider whether the content of the affidavit, setting aside the false material (or including the omitted material), is sufficient to establish probable cause. If it is not, the search warrant must be voided and the fruits of the search excluded. *Id.* at 155-156; *United States v. Pace*, 898 F.2d 1218, 1232 (7th Cir. 1990). And concomitantly, no good-faith exception can then apply. *See Leon*, 468 U.S. at 923.

But before a court will grant such an evidentiary hearing (a "*Franks* hearing"), the defendant must make a substantial preliminary showing, typically in a motion to suppress, that (1) the warrant affidavit contained a false statement or omitted a statement; (2) the affiant made or omitted the statement either intentionally or recklessly; and (3) the statement was material or necessary to the finding of probable cause. 438 U.S. at 155-56; *see United States v. Jackson*, 103 F.3d 561, 574 (7th Cir. 1996).

Considering whether to grant Merritt such a hearing, the district court rejected his contention that two statements made by Agent Vergon in the affidavit were false. But the court also concluded that Merritt had made a substantial preliminary showing that Agent Vergon had intentionally omitted material facts, namely, that during a meeting on January 9, 2001 between Agent Vergon and Merritt's accountant, Joseph Knarzer, Knarzer generally indicated that the Merritts were in good financial shape. Hence, the court granted Merritt the suppression hearing, held on December 20 and 21.

During that hearing, the district court heard testimony from both Knarzer and Agent Vergon. Knarzer generally had a poor recollection of his January 9 interview with Agent Vergon. He could only recall with certainty making two statements to Agent Vergon which could have positively reflected on the Merritts: the Merritts were current in their obligations, and the investigators were "barking up the wrong tree." (R.39 at 39-71.)

In contrast, Agent Vergon did not have trouble with his recollection of his meeting with Knarzer, and his detailed testimony supported the veracity of his belief that Merritt had a financial motive to commit arson. Specifically, Agent Vergon testified that Knarzer told him that he primarily performed end-of-the-year tax work for the Merritts, but had not handled any financial documents for the family since the end of 1999. The Merritts' gross income between 1997 and 1999 dropped from approximately $98,000 to $11,000. And during 1999, the first year of Club 2001's operation, it lost $27,000. (R. 39 at 88-90, 117-25.) Moreover, Agent Vergon testified that Knarzer never made any statement indicating that Merritt had "absolutely no financial motive" to destroy Club 2001. (R. 39 at 120, 125, 132-33.)

In addition, other than a credit check which revealed nothing amiss, additional investigation by Agent Vergon following the January 9 meeting also supported his sus-

picions: there were inconsistencies between Merritt and one of his sons about who controlled the business; Merritt was owed over $70,000 in back rent and other fees, which he had not been able to collect; Club 2001's alarm system had not been functioning properly since June; Merritt was also having trouble with his liquor license and zoning for the club; fines had been levied against the establishment; Merritt unsuccessfully attempted to sell the club shortly before the fire; and he told people it was losing money due to security costs.

The information omitted from the affidavit included that which could have both supported and detracted from a finding of probable cause. Based upon the foregoing evidence presented at the suppression hearing, the district court held that Agent Vergon omitted statements and information he received from Knarzer which Agent Vergon considered to be merely opinion, and not fact. Consequently, these omissions were not intentionally or recklessly in disregard of the truth. While Merritt does not explicitly challenge this conclusion on appeal, to the extent that he may implicitly raise the issue, we find no clear error in the court's determination.

## 2. The Warrant Lacked Probable Cause to Issue

Since the affidavit on its face included no information indicating that the financial records sought would reveal a motive for the Merritts to commit arson, the district court held that the warrant affidavit failed to allege probable cause. On appeal, the government concedes this point. Therefore, we next consider the district court's third and final ruling.

### 3. The Good-Faith Exception to the Exclusionary Rule

Although the district court determined that the warrant lacked probable cause to issue, in its Order denying Merritt's motion to suppress, the court also held that the good-faith exception to the exclusionary rule applied. In his appeal, Merritt essentially makes two interrelated arguments to challenge that holding. First, he complains that the district court created a new, legally incognizable good-faith exception to the exclusionary rule because it was AUSA Vaughn who actually sat at the keyboard and typed up the affidavit in support of the warrant. Second, should that argument fail, he asserts that the court erred when it found that Agent Vergon's reliance upon a facially valid warrant issued by a neutral and detached magistrate was objectively reasonable. And because Merritt does not challenge whether the magistrate judge was neutral and detached, this second inquiry is concerned only with Agent Vergon's objectively reasonable reliance.

### a. Drafting the Affidavit

As noted above, during the December hearing, among other witnesses, the district court heard from Agent Vergon about the circumstances leading up to and including the drafting of the affidavit and application for the warrant. Throughout the Club 2001 investigation, Agent Vergon provided AUSA Vaughn with bi-weekly reports, in writing, in person, and by telephone. During the drafting of the affidavit on January 22, 2001, AUSA Vaughn reviewed Agent Vergon's reports. The two discussed the facts of the case and the content of the affidavit. AUSA Vaughn served as scrivener and Agent Vergon reviewed and edited the affidavit.

It is common practice for a federal prosecutor to work with, alongside, and conjointly with a law-enforcement offi-

cer in the drafting of an affidavit in support of a warrant application. In this case, Agent Vergon was the signatory and the fact that it happened to be the AUSA who sat at the keyboard and typed the affidavit is immaterial to our good faith analysis. Merritt's counsel is unable to point to any case that says otherwise. In fact, volumes of case law encourage this sort of cooperation between the prosecutor and law-enforcement officers. *See*, *e.g.*, *Leon*, 468 U.S. at 903-04 n.4 (applying good-faith exception where officers consulted with three deputy district attorneys before submitting deficient warrants to the court); *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996) (noting that seeking the advice of a district attorney is a factor weighing in favor of determining that the officer's reliance on the warrant was objectively reasonable); *United States v. Carter*, 999 F.2d 182, 184-88 (7th Cir. 1993) (holding that a prosecutor's participation in the drafting of a "no-knock" provision of a warrant, later found to be insufficiently justified by the affidavit, did not preclude application of the good-faith exception); *United States v. Tagbering*, 985 F.2d 946, 949-51 (8th Cir. 1993) (applying the good-faith exception where a prosecutor had reviewed and signed the warrant affidavit before it was submitted to the court); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir. 1991) (noting "an officer's consultation with a government attorney is of significant importance to a finding of good faith").

Refusing to apply the good-faith exception to the exclusionary rule simply because an affidavit was prepared with the assistance and approval of prosecutors would do nothing to forward the rule's basic purpose, to deter police misconduct. As we discuss below and as the district court noted, in a case such as this where the issue is whether probable cause existed, Agent Vergon's consultation with the AUSA particularly supports the finding that his reliance upon the warrant was objectively reasonable.

### b.  Agent Vergon's Reliance on the Warrant

We next consider whether Agent Vergon's reliance on a facially valid warrant issued by a neutral and detached magistrate was objectively reasonable. As a preliminary matter, we observe that  an objectively reasonable belief that the warrant was properly issued must be demonstrated by the officer who provided the information material to the probable cause determination, the officer who obtained the warrant, and the officer who executed the warrant. *Leon*, 468 U.S. at 923 n.24. In this case, Agent Vergon provided the information for the warrant, obtained the warrant, and executed the warrant. And as noted *supra* Part II.A.1., Merritt does not challenge the district court's finding that Agent Vergon did not act recklessly or intentionally under *Franks*, 438 U.S. 154 (1978 ), (i.e., with bad faith), in providing the information for the warrant or in obtaining the warrant. Hence, we are concerned here only with whether Agent Vergon acted with an objectively reasonable belief that the warrant was properly issued when he *executed* the warrant.

The government must establish such objective reasonableness or "good faith" by a preponderance of the evidence, *Koerth*, 312 F.3d at 868; *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). Agent Vergon's decision to obtain a warrant is prima facie evidence of good faith, rebuttable if the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." 312 F.3d at 868 (quotations omitted). Here, Agent Vergon's reliance was objectively reasonable for three primary reasons.

First, the affidavit in this case was not "bare bones" or "boilerplate form." *See United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003) (finding affidavit sufficient even though "bare bones"). Agent Vergon provided numerous details and facts about the fire at Club 2001, including the

number of years he had been with the BATF, his knowledge and experience investigating criminal complaints, particularly arson cases, the amount of the insurance policy, and Merritt's use of an accountant.

Second, the affidavit was drafted, reviewed, and approved by AUSA Vaughn. Probable cause is a legal term of art and a "fluid concept" not "reduc[ible] to a neat set of legal rules," *United States v. Gates*, 462 U.S. 213, 232 (1983), and as to which "[r]easonable minds frequently may differ," *Leon*, 468 U.S. at 914. As the district court aptly noted, it is "incapable of precise definition." Thus, as we stated above, consultation with a prosecutor weighs in favor of a finding of objective reasonableness.

Third, and similarly, the warrant was issued by a neutral and detached magistrate. "[I]n the ordinary case, a law enforcement officer 'cannot be expected to question' the magistrate's probable cause determination." *United States v. Sleet*, 54 F.3d 303, 307 (7th Cir. 1995) (quoting *Illinois v. Krull*, 480 U.S. 340, 349 (1987)); *see also Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) (officer cannot be "required to disbelieve" the judge issuing the warrant).

To summarize, Vergon did everything he could to obtain a proper warrant. He collected information which he relayed to the AUSA. He then went to AUSA Vaughn for assistance in drafting an affidavit that would comply with the Fourth Amendment. Next Vergon went to a neutral and detached magistrate to obtain the warrant. Only then did he execute the warrant. There is no reason to expect Agent Vergon to second-guess both the magistrate judge, with years of training and experience in a judicial capacity, and AUSA Vaughn. The affidavit is not "so plainly deficient that any reasonably well-trained officer 'would have known that his affidavit failed to establish probable cause and that he

should not have applied for the warrant.'" *Koerth*, 312 F.3d at 869 (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

Having determined that the district court was correct in finding that Agent Vergon's reliance on the warrant was objectively reasonable, we make one final inquiry into the costs and benefits of excluding the seventy-four firearms—"inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately [was] found to be defective." *Leon*, 468 U.S. at 906-07. In the instant case, the cost of excluding the evidence would be to "essentially let Merritt free." (R.45 at 22.) But there would be no corresponding benefit because, as alluded to earlier, suppression in this case would not further the deterrent purpose of the exclusionary rule since Agent Vergon acted in good faith and made every effort to comply with the Fourth Amendment. We agree with the district court that the balance tipped in favor of allowing the evidence. Consequently, we affirm its denial of Merritt's motion to suppress.

## B.  Section 922(g)(1) Conviction

Next, Merritt contends that there was insufficient evidence to support the jury's verdict finding him guilty of Count 1. We accord great deference to a jury verdict. *United States v. Fernandes*, 272 F.3d 938, 943 (7th Cir. 2001). It will be overturned only when no rational trier of fact could have found the essential elements of the crime, weighing the evidence in the light most favorable to the prosecution. *United States v. Gardner*, 238 F.3d 878, 879 (7th Cir. 2001). Furthermore, we do not "second-guess the jury's credibility determinations." *Id.*

Under 18 U.S.C. § 922(g)(1), the government had the burden of proving beyond a reasonable doubt that (a) Merritt was a felon; (b) he "possessed" the seventy-four firearms on or about January 23, 2001; and (c) the firearms

traveled in interstate commerce. The sole issue at trial was possession, because Merritt stipulated that he was a felon and that the seventy-four firearms had traveled in interstate commerce. And since the firearms were discovered in a locked vault which Merritt at the time of the search denied having access to, the prosecution presented evidence of constructive, rather than actual, possession.

A person has constructive possession if he has "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003) (internal quotation omitted). "[C]onstructive possession can be established through circumstantial evidence," *United States v. Robinson*, 208 F.3d 626, 632 (7th Cir. 2000), including a series of inferences drawn from the evidence, *see Thomas*, 321 F.3d at 636.

For the sake of brevity, we list some of the inculpatory evidence presented at trial:

- aside from the seventy-three firearms contained in the vault, the contents also included: a Father's Day card addressed to Merritt, photographs of nude women and of Mrs. Merritt, photographs of Merritt with a woman who was not Mrs. Merritt, various photographic identifications of Merritt, and correspondence addressed to Merritt;

- of the seventy-three firearms contained in the vault, one was a Colt Commander handgun Merritt had purchased before he incurred his felony violation, and one was a Smith and Wesson shotgun with a fingerprint of Merritt's;

- prior to the opening of the vault, Merritt made statements expressing concern over his wife seeing photographs located in the vault;

- after the vault was opened, Merritt made statements about how the Sten machine gun in the vault operated;

- aside from the pistol-grip shotgun located in a concealed office in the basement, the office also contained adult videotapes, correspondence addressed to Merritt, and one photographic identification of Merritt; and

- Merritt went into the concealed office.

Merritt did present other evidence, wholly testimonial, which tended to prove his lack of constructive possession (i.e., the testimony of Mrs. Merritt, Stanley Merritt, and Lynn Atkinson). In addition, regarding the physical evidence, at trial (and now on appeal) Merritt offered numerous plausible explanations consistent with innocence. However, the jury's guilty verdict demonstrated that it disbelieved the defendant's witnesses and rejected the endless possible alternative explanations. *See United States v. Wilson*, 922 F.2d 1336, 1338-39 (7th Cir. 1991). We will not question the jury's credibility determinations. Therefore, weighing the evidence established at trial in the light most favorable to the prosecution, as we must, it is impossible for the defendant to show that no rational trier of fact could have found that he constructively possessed the seventy-four firearms on or about January 23, 2001. We affirm the jury's verdict.

## C. Sentencing Enhancement

Finally, Merritt argues that the district court erred in imposing a six-level enhancement under section 2K2.1(b)(1) of the Sentencing Guidelines.[1] The maximum

---

[1] Reading the verdict form, the jury convicted Merritt of possession of "approximately 74 firearms and numerous rounds of ammunition as a convicted felon on January 23, 2001." Hence, it seems to this court that at sentencing, the district court's work had been done for it; because the jury had already found that he

(continued...)

statutory penalty for a violation of 18 U.S.C. § 922(g)(1) is ten years' incarceration. Prior to the six-level enhancement, Merritt's offense level was twenty-two, with a corresponding sentencing range of fifty-one to sixty-three months. U.S.S.G. Sentencing Table. After the enhancement, his offense level was twenty-eight and the district court sentenced him to 108 months incarceration. Merritt asserts that we should extend the protections of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), overrule our own prior decisions and the decisions of numerous other circuits, and hold that although his sentence is less than the statutory maximum, whether Merritt constructively possessed each of the seventy-four firearms had to be proved beyond a reasonable doubt and submitted to the jury. We decline to do so.

So long as the total sentence does not exceed the relevant maximum statutory penalty, under this court's current precedent, a district court need only find a sentencing factor by a preponderance of the evidence—even if its application more than doubles a defendant's guideline sentence. *See, e.g.*, *Harris v. United States*, 536 U.S. 545, 549 (2002); *United States v. Johnson*, 342 F.3d 731, 735-36 (7th Cir.

---

(...continued)

possessed "approximately 74" firearms on January 23, the court's inquiry into that issue was unnecessary. However, the district court had instructed the jury that "[i]n order to return a verdict of guilty on Count One of the Indictment, you must find that the Defendant possessed *at least one* of the firearms . . . listed in Count One." Furthermore, during the sentencing hearing, the government stated, "[T]he jury found the defendant guilty in Count One, having possessed at least one of the firearms . . . ." Consequently, the guilty verdict could have been the result of the jury's conclusion that Merritt possessed *only one* firearm on or about January 23, 2001. The number of weapons possessed by the defendant was therefore very much at issue during sentencing.

2003) (holding that relevant conduct need only be proved by a preponderance where the defendant's sentence was increased from ten to seventeen years, but noting that "due process considerations may, at some point, require a greater showing for a dramatic increase") (citations omitted); *United States v. Rodriguez*, 67 F.3d 1312, 1323 (7th Cir. 1995) (upholding sentencing increase from a range of fifty-one to sixty-three months to life imprisonment under preponderance standard). *But cf. United States v. Boos*, 329 F.3d 907, 910 (7th Cir. 2003) (refusing to choose between a clear and convincing standard and the preponderance standard where the enhancement resulted in the addition of more than seventeen additional years of incarceration, which the court found "exceptional," finding instead that evidence supported the sentence under either standard). Here the evidence established not only by a mere preponderance, but also clearly and convincingly, *see supra* Part II.B., that Merritt constructively possessed seventy-four firearms on or about January 23, 2001. The district court's sentence is affirmed.

### III.  Conclusion

For the foregoing reasons, the judgment of conviction and sentence of the district court are AFFIRMED.

No. 02-4211                                                     19

A true Copy:

 Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
