**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard F. REDIG, Defendant–Appellant.**

**No. 93–2097.**

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1994.

Decided June 17, 1994.

Debra Riggs Bonamici (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Jonathan M. Minkus (argued), Skokie, IL, for defendant-appellant.

Before POSNER and MANION, Circuit Judges, and REYNOLDS, District Judge.*

REYNOLDS, District Judge.

Richard Redig ("Redig") appeals his conviction and sentence on a charge of bank robbery, the result of a guilty plea Redig says he should have been permitted to withdraw. For reasons set forth below, we affirm the conviction but vacate the sentence and remand for resentencing.

## I. Background

The indictment against Redig alleged that he and three others met on August 7, 1991, to plan the robbery of a branch office of the Suburban National Bank of Palatine. At the meeting, Redig is alleged to have given his co-conspirators a "schematic" of the branch office's layout as well as information about its security system—information which Redig had obtained, ironically, through his efforts to sell the branch a new set of security cameras. The day after the meeting, according to the indictment, Redig's co-conspirators robbed the branch office of about $80,000 through the threatened use of firearms, pursuant to the plan agreed upon at the meeting. (Redig, meanwhile, pitched his cameras at the bank's main office.) The indictment charged Redig and two of his co-conspirators with bank robbery, in violation of 18 U.S.C.

§ 2113(a), and bank robbery through the use of a dangerous weapon, in violation of 18 U.S.C. § 2113(d).

On August 21, 1992, Redig agreed to plead guilty to the portion of the indictment alleging a violation of 18 U.S.C. § 2113(a), in exchange for the government's agreement to dismiss the other charges against Redig and to strike from the indictment its reference to "use of a dangerous weapon, namely two handguns," upon which the alleged violation of 18 U.S.C. § 2113(d) had been based. The agreement also included various provisions relevant to sentencing, among them the stipulation that the parties were free to disagree over whether certain sentencing adjustments applied.

At a hearing held the day the agreement was signed, Redig was advised of, and said he understood, the nature of the charge against him, the rights he would have enjoyed had the case gone to trial, his maximum possible sentence, and the various provisions of the plea agreement. Redig also was asked whether each of the allegations contained in the portion of the indictment to which he pleaded guilty was true. The district court recited each of the allegations, phrasing them as questions (e.g., "In the early evening of August 7th, 1991, at a park in Arlington Heights, did you meet with your codefendants ... to plan the execution of the bank robbery?"), and usually Redig simply responded, "Yes, sir."

On a few points, however, he elaborated. When asked, for example, whether he provided his co-conspirators with information about the bank's security system, he said that he told them of the existence of a security system but not of the details of its operation, because he was not familiar with those details. When asked whether the conspirators had determined at their meeting who would enter the bank and who would drive the getaway car, Redig responded that that had not been determined, but that he knew who one of those entering the bank would be.

After Redig had admitted to each of the allegations contained in the relevant portions

* The Honorable John W. Reynolds, District Judge for the Eastern District of Wisconsin, sitting by designation.

of the indictment, the court stated its findings that Redig was competent to plead guilty and that his plea was knowing, voluntary, and supported by fact. The court then accepted the plea.

On September 3, 1992, during his initial presentence investigation interview, Redig told his probation officer a somewhat different story of his involvement in the bank robbery. He still acknowledged meeting with the other three on August 7, 1991, and providing them with a schematic of the Bank of Palatine, but now he insisted that he did so only because he assumed they were joking about robbing the bank. It came as a great surprise, he said, when he heard about the robbery on the news the next day.

Then, on November 13, 1992, Redig provided his probation officer with a six-page, single-spaced, typewritten statement in which he denied attending the August 7, 1991 meeting and denied supplying his alleged co-conspirators with information about the bank. According to the statement, one of the co-conspirators, a long-time acquaintance, had called Redig to request such information, but Redig refused his request and tried to discourage him from carrying out the robbery. Redig confessed he was wrong to have failed to alert the police after receiving the call, but he claimed he was guilty of nothing more.

On December 15, 1992, Redig filed a motion for leave to withdraw his guilty plea. According to the motion, Redig had entered the plea only because the government's disclosure of a mass of evidence shortly before trial and the thought of spending many years in prison had rendered him "extremely overwhelmed and overwrought," so much so that "he ceased to function rationally or coherently." The motion further alleged that Redig "persists in his claim that he is innocent of the charges in the indictment."

Without having held a hearing, the district court denied Redig's motion in an order issued March 10, 1993. The court found that Redig, contrary to his assertion, had not seemed overwhelmed or overwrought at the acceptance-of-plea hearing but rather had appeared to understand the questions, had "answered coherently," and had been "fluent, responsive, and forthright." The court further noted that at the hearing Redig had "made specific factual representations regarding the crime alleged ... thus tending to negate his subsequent claims of non-involvement."

Background relevant to sentencing is discussed below.

## II. Analysis

### A. Withdrawal of Plea

■ The district court's refusal to allow withdrawal of Redig's guilty plea is reviewed for abuse of discretion. *United States v. Coonce*, 961 F.2d 1268, 1275 (7th Cir.1992). Under Rule 32(d), Fed.R.Crim.P., if a motion for leave to withdraw a plea is made before sentencing, the motion "may" be granted "upon a showing by the defendant of any fair and just reason." Redig contends he satisfied this standard by persistently claiming innocence before and after pleading guilty and by offering a reasonable explanation for why he pleaded guilty. If these factors did not automatically justify withdrawal of the plea, Redig contends, they at least entitled him to a hearing.

■ A hearing on a motion to withdraw a plea is to be "routinely granted" if the movant offers any "substantial evidence that impugns the validity of the plea." *United States v. Fountain*, 777 F.2d 351, 358 n. 3 (7th Cir.), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986). But if no such evidence is offered, or if the allegations advanced in support of the motion "are mere conclusions or are inherently unreliable," the motion may be denied without a hearing. *Id.* at 358; *United States v. Caban*, 962 F.2d 646, 649 (7th Cir.1992). Further, if the allegations set forth in the motion contradict statements made by the defendant at an acceptance-of-plea hearing which satisfied the requirements of Rule 11, Fed.R.Crim.P., the allegations must overcome the "presumption of verity" that attaches to such statements. *Id.; United States v. Trussel*, 961 F.2d 685, 689–90 (7th Cir.1992).

■ Redig contends the district court should have discounted the admissions he

made during his acceptance-of-plea hearing because they consisted almost entirely of monosyllabic responses to the court's leading questions, and when they went beyond that, they suggested he was not as involved in the robbery as the plea agreement made him out to be. We disagree. The district court was within its discretion to conclude that Redig's specific, narrative responses to certain questions confirmed, rather than called into doubt, the voluntary and knowing nature of his brief responses to the other questions. As Redig has identified no other element of his Rule 11 hearing that was lacking, the admissions he made during the hearing are presumed true.

■ There was no abuse of discretion, furthermore, in the district court's conclusion that this presumption was not overcome by the allegations offered in support of Redig's motion. Having been in an excellent position to observe Redig at the acceptance-of-plea hearing, the district court was permitted to conclude on the basis of Redig's demeanor at the hearing that his claim of having "ceased to function rationally or coherently" at the time of the hearing was not credible. *See Caban,* 962 F.2d at 649–50; *United States v. Seavoy,* 995 F.2d 1414, 1421 (7th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 407, 126 L.Ed.2d 354 (1993). Redig contends that had he been granted a hearing on his motion, he would have supported his claim with the testimony of his psychologist, who believes Redig pleaded guilty only because of his "extreme passivity." The psychologist's views, however, were neither mentioned nor offered until the sentencing hearing, which came after the decision on Redig's motion, and even then were not formally offered in support of the motion. The psychologist's opinion therefore has no bearing on whether the district court abused its discretion in denying the motion.

Finally, the district court did not err in summarily rejecting Redig's claim of innocence. Redig's motion simply stated that he "persists in his claim" of innocence, without specifying what exactly the claim was, or what evidence there was in support of it. *See Fountain,* 777 F.2d at 358 n. 4 (upholding summary rejection of a similarly vague

claim); *United States v. Groll,* 992 F.2d 755, 758 (7th Cir.1993) (noting that an unsupported claim of innocence does not constitute a "fair and just reason" for withdrawal of a guilty plea). We may assume, as the district court did, that Redig's motion was referring to the statements he had made to his probation officer, but that gets us nowhere, because the statements are contradictory at their core. According to one, Redig attended the meeting of his alleged co-conspirators and provided them with a schematic of the bank's layout but thought they were joking about the robbery; according to the other, he did not attend their meeting and did not give them any information. In view of this contradiction, which Redig has not attempted to explain, the district court could properly find that both statements were "inherently unreliable" and that they therefore did not warrant an evidentiary hearing.

We conclude, in sum, that the district court did not abuse its discretion in deciding, without holding a hearing, that Redig failed to set forth a "fair and just reason" for permitting withdrawal of his guilty plea.

### B. Sentencing

■ Redig challenges two aspects of the district court's sentencing determination. One is the court's finding that Redig was not a "minor participant" in the bank robbery and thus was not entitled to a two-point offense-level reduction under U.S.S.G. § 3B1.2(b). This finding is reviewed only for clear error. *United States v. Hagan,* 913 F.2d 1278, 1283 (7th Cir.1990); 18 U.S.C. § 3742(e).

The guideline commentary defines "minor participant" as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 (Applic. Note 3). Redig contends that his lesser culpability (assuming he is culpable at all) is evidenced, first, by the fact that the information he provided his co-conspirators was essentially worthless; second, by the fact that he did not participate in the execution of the robbery; and third, by his psychologist's testimony that he was far too passive to contribute anything to the planning of the robbery.

■ The first of these grounds must be rejected because Redig submitted to the district court no evidence or argument suggesting that the information he provided his co-conspirators, in particular the schematic of the branch office's layout, was insignificant. Even if, as Redig now contends, the schematic could have been prepared by anyone who entered the branch office, the district court was within its discretion to assume that the schematic was of real value to the conspirators in their planning of the robbery. Redig's second point—that he did not participate in the robbery itself—only begs the question whether his behind-the-scenes contribution was of comparable value to the others' contributions.

■ As for the opinion of Redig's psychologist, the district court was within its discretion to discount his testimony for the reasons it did. First, the psychologist himself acknowledged that Redig's personality might have changed during the year that passed between the time of the robbery and the time the psychologist formed his opinion about Redig's "extreme passivity," possibly because by that time Redig was "going through a period of denial" as a result of his involvement in the robbery.

Second, there was ample evidence in the record to support the conclusion that Redig, contrary to the psychologist's opinion, was quite capable of helping to organize criminal activities. According to the government's offer of proof at sentencing, which was based on the confessions of Redig's co-conspirators, Redig had assisted them prior to the bank robbery in planning the robberies (mostly unattempted) of various jewelry stores and homes in the suburban Chicago area. There is also the conspicuous fact that the branch office robbed by Redig's co-conspirators after his meeting with them was the same one Redig had been dealing with in his capacity as a security systems salesman, strongly supporting the district court's conclusion that Redig "took part in choosing" the target of the robbery.

· We conclude, therefore, that the district court's refusal to find Redig a "minor participant" in the robbery was not clearly erroneous.

■ Redig's second challenge to his sentence concerns the district court's decision to increase his offense level by three points based on his co-conspirators' use of firearms during the bank robbery. U.S.S.G. § 2B3.1(b)(2)(C) (1991). For sentencing purposes, the use of firearms during the robbery is attributable to Redig, though he was not present at the robbery, as long as their use was "reasonably foreseeable." U.S.S.G. § 1B1.3(a)(1)(B). The district court's finding to that effect was based solely on the assumption that the portion of the indictment to which Redig pleaded guilty included the allegation that the "the use of handguns" was a component of the offense.

■ In fact, however, the plea agreement provided, as noted above, that the government would move to strike this allegation. Whether such a motion was ever actually brought or decided is not clear from the record; the judgment notes that certain counts of the indictment had been dismissed on motion of the government, but does not indicate that the reference to firearms in the remaining count had been stricken as well. Be that as it may, the government concedes, and we agree, that under the terms of the plea agreement, the content of the indictment cannot by itself support the district court's conclusion regarding the foreseeability of firearm use.

■ The government contends, nonetheless, that because it offered independent evidence of the foreseeability of firearm use just before the district court made its final finding on this issue, we should consider that evidence in our review of the district court's decision, even though the district court chose not to mention it. We decline to do so, however, for our traditional practice requires that the weighing of such evidence be left to the sound discretion of the district court. *See United States v. DePriest,* 6 F.3d 1201, 1213–14 (7th Cir.1993). The government's proposal, furthermore, disregards the fact that Redig specifically bargained for the deletion of the reference to firearm use from the relevant portion of the indictment. He did so, presumably, for the central purpose of putting the government to its proof on this

issue, a purpose which we frustrate if we deprive the district court of the initial responsibility for determining whether the government's proof is adequate.

### III. Conclusion

For the foregoing reasons, Redig's conviction is AFFIRMED but his sentence is VACATED and the case remanded for resentencing on the issue of whether an adjustment under U.S.S.G. § 2B3.1(b)(2)(C) (1991) is warranted.