**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Zaki Ahmad RAHIM, Defendant–**
**Appellant.**

No. 02–1450.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 5, 2002.
Decided Dec. 27, 2002.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

### ORDER

Zaki Ahmad Rahim was indicted on numerous counts of mail fraud, with one count of making false statements in an application for supplemental security income benefits ("SSI"), and with one count of making false statements for use in determining the continued right to SSI benefits. Rahim pleaded guilty to one count of mail fraud and the remaining counts were dismissed. Shortly before sentencing, however, Rahim moved to withdraw his guilty plea. The district court denied this motion and then sentenced Rahim to 24 months' imprisonment. Rahim appeals from the district court's denial of his motion to withdraw his guilty plea and also challenges the district court's calculation of the loss for sentencing purposes. We affirm.

### I.

On or about October 27, 1978, Rahim applied for and received a Social Security number under the name of Mohammad Zaki Ahmad Abdel Rahim. Nearly ten years later, on or about October 9, 1987, Rahim applied for and received a second Social Security number; this card was is-

sued under the name of Mohammad Zaki Ahmad. Then on or about July 25, 1995, Rahim applied once more for a Social Security card, this time using the name of Zaki Ahmad Mohamed Abdul Rahim. On his last application, Rahim falsely indicated that he did not have a Social Security number.

Rahim applied for SSI benefits on or about April 15, 1994. In this application, he falsely indicated that he was disabled due to a broken back, a bleeding ulcer and hearing trouble. Based on his false application, the Social Security Administration ("SSA") determined that he was disabled. Rahim later filed another application for SSI benefits. In that application, Rahim made several false statements and omissions: He did not disclose that he had two other Social Security numbers; he did not disclose that he was receiving unemployment compensation; he did not disclose that his wife was receiving unemployment compensation; he falsely stated that he had not received any income since April 1994; he did not disclose material personal resources, including a savings account. And he did not disclose that he had received worker's compensation payments; he also failed to reveal that he had purchased a grocery store, opened two bank accounts and had five new automobiles.

On January 19, 2000, Rahim completed a "Statement for Determining Continuing Eligibility for Supplemental Security Income Payments" for the SSA. In this statement, Rahim once more failed to reveal his use of other names and other Social Security numbers. He also did not disclose that he and his wife owned and operated a grocery store and that they were employed by and earned money from that grocery store. He also failed to disclose various assets, including bank accounts, life insurance policies and automobiles.

Based on Rahim's applications and his "Statement for Determining Continuing Eligibility for Supplemental Security Income Payments," Rahim received SSI payments from the federal government in the amount of $38,919.25 and state-paid SSI benefits in the amount of $8,086.66. Additionally, because Rahim received federal SSI benefits, he also obtained Medicaid benefits from the State of Wisconsin in the amount of $23,235.89.

As a result of this scheme, a federal grand jury returned a seven-count indictment against Rahim, alleging five counts of mail fraud (Rahim had received the SSI and Medicaid payments through the United States mails), in violation of 18 U.S.C. 1342; one count of making false statements in an initial application for SSI benefits, in violation of 42 U.S.C. 1383a(a)(1); and one count of making false statements for use in determining the continuing right to SSI benefits, in violation of 42 U.S.C. 1383a(a)(2).

Rahim pleaded not guilty and a trial was set for August 14, 2001. In preparation for trial, the government had approximately 17 witnesses under subpoena, and four law enforcement agents were prepared to testify at trial. However, on August 10, 2001, shortly before the scheduled trial date, Rahim entered into a plea agreement with the government under which he pleaded guilty to count one and the remaining counts were dismissed.

On October 23, 2001, over two-and-one half months after he pleaded guilty and only three days before his scheduled sentencing date, Rahim moved for leave to withdraw his guilty plea. Rahim did not file an affidavit in support of his motion, but instead filed a three-paragraph document he entitled a "memorandum brief," in which he argued that he should be permitted to withdraw his guilty plea because: (1) "he did not completely understand the

charges against him at the time he entered the guilty plea"; (2) "he was not aware of the alleged evidence to substantiate the charges to which he pled guilty"; and (3) he "maintains his innocence to these charges." In response, the district court canceled the October 26, 2001 sentencing hearing and set a briefing schedule to address Rahim's motion to withdraw. The government then filed an affidavit and brief arguing that Rahim's motion should be summarily denied because he failed to present any fact impugning the validity of his guilty plea. Rahim did not respond to this brief.

On November 30, 2001, the district court held a non-evidentiary hearing on Rahim's motion to withdraw his guilty plea. At that hearing, the district court held that Rahim was not entitled to an evidentiary hearing on his motion to withdraw his guilty plea, and that Rahim's plea agreement and the transcript from the change of plea hearing made clear that Rahim knowingly and voluntarily entered into the plea agreement. Accordingly, the district court denied Rahim's motion to withdraw his guilty plea. A new sentencing hearing was then scheduled and, on February 7, 2002, the district court sentenced Rahim to 24 months' imprisonment, three years of supervised release and restitution in the amount of $70,241.80.

Rahim appeals, arguing that the district court erred in refusing to hold an evidentiary hearing on his motion to withdraw his guilty plea and in denying his motion to withdraw his guilty plea. Rahim also challenges his sentence, claiming that the district court erred in calculating the amount of loss involved in the offense under the guideline provisions.

## II.

■ On appeal, Rahim first argues that the district court erred in refusing to hold an evidentiary hearing on his motion to withdraw his guilty plea. A hearing on a motion to withdraw a plea is to be "routinely granted" if the movant offers "substantial evidence that impugns the validity of the plea." *United States v. Redig,* 27 F.3d 277, 280 (7th Cir.1994). However, if no such evidence is offered, or if the allegations in support of the motion "are mere conclusions or are inherently unreliable," the motion may be denied without a hearing. *Id.* This court reviews the district court's determination on whether an evidentiary hearing is necessary for an abuse of discretion. *See, e.g., United States v. Winston,* 34 F.3d 574, 579 (7th Cir.1994).

The district court did not abuse its discretion in refusing to hold an evidentiary hearing on Rahim's motion to withdraw his guilty plea because Rahim failed to present substantial evidence calling into question the validity of the plea. Rather, in support of his motion to withdraw his guilty plea, Rahim merely contended that he did not understand the charges against him, that he was not informed of the evidence against him, and that he was not in fact guilty. There was no need for the district court to hold an evidentiary hearing to address these points because the plea agreement and transcript of the change of plea hearing provided the necessary information for the district court to rule on these issues. Moreover, these arguments are merely conclusory and fail to demonstrate the need for further fact-gathering. In fact, on appeal, Rahim fails to cite to any additional evidence he would have presented at an evidentiary hearing. Under these circumstances, we conclude that the district court did not abuse its discretion in denying Rahim an evidentiary hearing on his motion to withdraw his guilty plea. *See, e.g., Redig,* 27 F.3d at 280–81 (district court did not abuse its discretion in denying defendant's motion to

withdraw his guilty plea without a hearing where the defendant merely presented conclusory allegations that plea was not voluntary and knowing); *Winston*, 34 F.3d at 579 (district court did not abuse its discretion in refusing to hold an evidentiary hearing on defendant's motion to withdraw his guilty plea where defendant failed to allege in motion or affidavit facts that would constitute grounds for allowing the withdrawal of the guilty plea).

■ Rahim next argues that the district court erred in denying his motion to withdraw his guilty plea. Rule 32(e) of the Federal Rules of Criminal Procedure authorizes a district court to permit the withdrawal of a guilty plea "if a defendant shows any fair and just reason." However, after the district court has accepted a defendant's guilty plea, "the defendant does not have an unlimited right to withdraw the plea." *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir.2000). A district court's denial of a motion to withdraw a guilty plea is reviewed for an abuse of discretion, *see United States v. Pike*, 211 F.3d 385, 388 (7th Cir.2000), and a district court's findings regarding whether the defendant has demonstrated a "fair and just reason" to withdraw his guilty plea are reviewed for clear error. *See United States v. Ray*, 828 F.2d 399, 422 (7th Cir. 1987).

As previously noted, before the district court Rahim offered three reasons in support of his motion to withdraw his guilty plea: (1) "he did not completely understand the charges against him at the time he entered the guilty plea"; (2) "he was not aware of the alleged evidence to substantiate the charges to which he pled guilty"; and (3) he "maintains his innocence to these charges." On appeal, however, Rahim argues that his plea was not voluntarily entered because he did not have a full understanding of the plea hearing.

In support of this argument, Rahim cites to portions of the plea colloquy which he maintains demonstrate that he had a limited understanding of English. Specifically, he quotes the district court's questioning during the colloquy, wherein the court asked "[a]nd you speak English?" Rahim responded "[n]ot that much. I do speak English." The district court inquired further: "Do you speak enough that you understand what we're talking about today?" Rahim responded "[s]ome words, yes. Some words, no." Later in the colloquy, the following exchange took place:

Court: Then Mr. Rahim, you're pleading guilty to this charge because you are guilty. Is that correct?

Defendant: Yes.

Court: Okay. And counsel, Mr. Bishop, is there any reason why I shouldn't, in view of your client's admission of guilt, accept your client's guilty plea?

Defense Counsel: I can think of no reason not to, Judge.

Court: All right. Then I will accept the guilty plea. Mr. Rahim, what is your plea to Count 1 of the indictment?

Defendant: Yes, I received it.

Court: So then your plea is what?

Defendant: I don't know how I have to do this. They know they send me the check.

Court: I am asking are you pleading—

Defendant: Yes.

Court: There's either two pleas. Guilty or not guilty. I take it—what's your plea?

Defendant: They feel I am guilty, I'm guilty.

Court: Do you agree that you are guilty?

Defendant: That's what they feel. I cooperate with them.

Court: You're pleading guilty, then.

Defendant: Yes, I am pleading guilty.

AUSA Campbell: Judge, I would like him to say he's pleading guilty because he is guilty.

Court: Yes, I think so.

Mr. Rahim, we've come this far. We're about 90 percent done, so let's just try and get the last 10 percent. You're pleading guilty because you are guilty. Is that right?

Defendant: No, it's not correct. But I am pleading guilty. Okay.

Defense Counsel: One moment.

(Discussion off the record.)

Court: Let me ask you again, after consultation with your lawyer. You're pleading guilty because you are guilty. Is that correct?

Defendant: That's right.

Court: Okay. Are you comfortable, Mr. Campbell?

AUSA Campbell: Yes, thank you, Judge.

Rahim contends on appeal that this exchange demonstrates that he had difficulty understanding English and thus the proceedings, and that he also "had some issues regarding whether or not he was guilty." However, in denying Rahim's motion to withdraw his guilty plea, the district court concluded that "Rahim understood the nature of the charges he faced," and that his claim of actual innocence failed because he had admitted his guilt during the plea colloquy. Specifically, the district court concluded that "[g]iven the great care with which Rahim's plea was accepted, and the consultations with counsel prior to and during the plea colloquy, in addition to the lapse of more than two months from the time the plea was entered until the motion for withdrawal, Rahim's conclusory assertion that he's innocent falls far short of the fair and just standard of [Rule 32(e)]." While it is true that Rahim had stated at one point in the plea colloquy that he was not pleading guilty because he was guilty, he then reversed tack and acknowledged that he was pleading guilty because he was in fact guilty. The district court accordingly found that "it is apparent that Rahim has not adequately provided any reason or any evidence to think that his guilty plea was involuntary, or that his repeated statements of factual guilt were false." Given the foregoing, we conclude that the district court's findings were not clearly erroneous.

Moreover, the purpose of Rule 32(e) – which authorizes district court to allow a defendant to withdraw a guilty plea – is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.'" *United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991) (quoting *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984)). Yet, the procedural history of this case demonstrates that Rahim's plea was not hastily entered, and that his attempt to withdraw his plea was part of his continuous procedural posturing. Specifically, the time-line of this case finds Rahim first charged on March 28, 2001. He pleaded not guilty on April 20, 2001, and a trial was set for August 1, 2001. Then on July 17, 2001, he indicated that he wanted to change his plea and a tentative change-of-plea hearing was set for July 18, and then rescheduled for July 20. On that date, Rahim decided not to change his plea, and a new trial date was set for August 14, 2001. Then at an August 10, 2001 pretrial conference, Rahim

and his attorney signed a plea agreement and Rahim entered a guilty plea as to count one. The district court then scheduled a sentencing hearing for October 26, 2001. Three days before the sentencing hearing, Rahim moved to withdraw his guilty plea. And then after the district court denied his motion and proceeded to sentence Rahim, Rahim expressly disavowed ever having authorizing his counsel to file the motion to withdraw the plea in the first instance, and stated that he always intended to accept responsibility for his offense.[1] This procedural history demonstrates that Rahim's decision to plead guilty was not hastily made or the product of confusion, and that Rahim was instead hedging the system. The delay between the time Rahim pleaded guilty and his subsequent motion to withdraw, as well as the prejudice to the government (who had approximately 17 witnesses under subpoena, and four law enforcement agents prepared to testify at trial) by Rahim's change of mind, further supports the district court's denial of Rahim's motion to withdraw his guilty plea. *United States v. Thompson*, 680 F.2d 1145, 1152–53 (7th Cir.1982). Under all of these circumstances, we conclude that the district court did not abuse its discretion in denying Rahim's motion to withdraw his guilty plea.

█ Finally, Rahim argues that district court erred in determining the amount of loss involved in his offense of conviction for purposes of determining his sentence. As noted above, the district court determined that the loss involved in the offense of conviction totaled $70,241.80, based on the $38,919.25 in federal SSI benefits, the

$8,086.66 in state-paid supplemental SSI benefits, and the Wisconsin Medical Assistance Program benefits of $23,235.89 that Rahim received. On appeal, Rahim argues that the district court erred in determining the amount of the loss because it "did not receive any type of testimony as to how the loss amount was determined." However, in his written plea agreement, Rahim "knowingly and voluntarily waive[d] his right to appeal his sentence in this case," provided that his sentence was not "in excess of the statutory maximum" or based on the "sentencing court's reliance on any constitutionally impermissible factor." Rahim's 24–month sentence was less than the 30–year statutory maximum governing mail fraud offenses, 18 U.S.C. § 1341. Rahim also does not contend that the sentencing court relied on a constitutionally impermissible factor. Therefore, he has waived his right to appeal his sentence. *United States v. Hare*, 269 F.3d 859, 860 (7th Cir.2001) ("A waiver of appeal is valid, and must be enforced, unless the agreement in which it is contained is annulled (for example, because involuntary.")).

### III.

Rahim entered into a plea agreement with the government and while he later regretted that decision, the district court found no just and fair reason supporting withdrawal of his guilty plea. That decision was not clearly erroneous and the district court did not abuse its discretion in denying his motion to withdraw the guilty plea. Rahim's challenge to the district court's sentence also fails because he

---

1. The government argues that because Rahim maintained at his sentencing hearing that he did not authorize his attorney to file the motion to withdraw his plea, Rahim has waived any claim of error stemming from the denial of his motion to withdraw his guilty plea.

Because we conclude that the district court did not abuse its discretion in denying the Rahim's motion to withdraw his guilty plea, we need not determine whether Rahim's subsequent renunciation of this motion constituted a waiver.

waived his right to appeal his sentence. For these and the foregoing reasons, we AFFIRM.